IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:11CR33

RICHARD T. OLDAKER,
        Defendant.

**OPINION/REPORT AND RECOMMENDATION**

On the 14th day of February, 2012, came the defendant, Richard T. Oldaker, in person and by his attorney, Belinda A. Haynie, and also came the United States by its Assistant United States Attorney, Stephen Warner, for hearing on defendant's "Motion to Suppress Evidence" filed on January 30, 2012 [Docket Entry 91]. The United States filed its "Objection to Defendant's Motion to Suppress Evidence" on February 8, 2012 [Docket Entry 104].

**I. Procedural History**

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on December 13, 2011. The indictment charges the defendant, along with 7 co-defendants, in a 65-count Indictment. Defendant is specifically charged with Methamphetamine Conspiracy (Count One); Maintaining a Drug-Involved Premises (Count Two); Possession of Material used in the Manufacture of Methamphetamine (Count Three); and Possession of Pseudoephedrine to be used in the Manufacture of Methamphetamine (Counts Seven, Fifty-One, and Sixty-Three) (Docket Entry 1).

Defendant appeared before the Court for an arraignment on January 13, 2012, at which time he pled not guilty to all counts.

## II. Contentions of the Parties

Defendant contends:

1. Probable cause did not exist to support the search.

2. The good faith exception to the exclusionary rule should not apply as the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

3. Any statement taken from the defendant should be suppressed as fruits of the poisonous tree.

The United States contends:

1. The warrant is valid because it was based on both a written affidavit and an oral presentation by the affiant, which together sufficiently establishes probable cause.

2. The officers executed the warrant in good faith.

## III. Statement of Facts.

The undersigned heard the sworn testimony of Corporal R.C. Hebb of the Upshur County Sheriff's Department and Upshur County Magistrate James Coffman, and admitted into evidence Defendant's Exhibits 1, 2, and 3 and Government Exhibits B, C, D, and E.

The undersigned finds the testimony of Cpl. Hebb and Magistrate Coffman credible. Each corroborated the testimony of the other. Each testified there was a search warrant issued in the early morning hours for a residence on Railroad Avenue in Upshur County, prior to the search warrant in question being issued. Each testified he had had a conversation with the other regarding the information obtained from the informants questioned during the first search. Each testified there was information shared with the magistrate that was not in the affidavit in support of the search warrant.

The undersigned finds the following facts based on the exhibits in evidence and the credible testimony of Corporal Hebb and Magistrate Coffman. In the early morning of September 20, 2011, Corporal Hebb appeared before Upshur County, West Virginia Magistrate Michael Coffman, seeking the issuance of a search warrant for property at Railroad Avenue in Upshur County. Magistrate Coffman issued the search warrant and it was executed that same night.

Four individuals were in the Railroad Avenue residence at the time it was searched. Three, John Arbogast, Brittany Esquer, and Robin Arbogast, gave oral and handwritten statements to officers regarding seeing items used in the manufacture of methamphetamine at the property of Richard Oldaker on Upper Childers Run in Upshur County and the property of Richard Jarrett at 85 Wood Street in Buckhannon. John Arbogast said he had seen the items at Defendant's residence the day prior. The two women said they had seen the items possibly a week or a week and a half earlier.

When the officers were finished with the Railroad Avenue search, Cpl. Hebb phoned Magistrate Coffman for the second time that night, and told him he would like to obtain two more search warrants as a result of information he obtained during the first search. He performed no further investigation before calling the magistrate. Magistrate Coffman came back to the Upshur County Magistrate's Office and met with Cpl. Hebb again. Cpl. Hebb brought him two search warrant applications, one for Defendant's residence on Upper Childers Run and one for 85 Wood Street. The written affidavit in support of the search warrant for Defendant's residence contained the following information:

> [T]he facts for such belief are that on September 20, 2011, Cpl. R.C. Hebb, UCSD, did obtain information from an individual/informant that gave sworn, handwritten statements advising that the day before at the residence located at Rt. 9 Box 168 Buckhannon, Upshur County, WV at the residence of Richard Oldaker, they had witnessed several items within the said residence that are used in the making of a

3

> Clandestine Drug Lab, including but not limited to; lithium batteries, Sudafed, Starting Fluid, jars, tubing and coffee filters. These are components commonly used in the manufacturing of methamphetamine.

Cpl. Hebb and Magistrate Coffman conversed while the magistrate was reading the first warrant (for Hebb's residence). During the conversation, Cpl. Hebb told Magistrate Coffman that while conducting the search at the Railroad Avenue address, he got three sworn, written statements. One, by John Arbogast, said he had seen items used in the manufacture of methamphetamine at Defendant's residence only the day before. He noted that Arbogast had been used before as an informant and his information turned out to be good. Magistrate Coffman testified that he was familiar with John Arbogast's reputation from his prior work as a Deputy. He had heard that when Arbogast "got in trouble he would cooperate." He never heard that Arbogast had lied. The conversation was not recorded nor was it memorialized in any other way. The unsworn conversation was not part of the four corners of the affidavit made by Deputy Hebb in support of the issuance of the search warrant at issue.

Magistrate Coffman testified he took into account the unsworn information presented to him during the unsworn conversation. He did not rely solely on the written affidavit. As indicated, the conversation took place before Cpl. Hebb was sworn, Magistrate Coffman testified he did not swear the officer to the oral information, only as to the information provided in the written affidavit– as he said he always does.

Magistrate Coffman then issued the search warrant based upon the information provided him in the affidavit of Cpl. Coffman and the additional oral information

Magistrate Coffman then read the second affidavit (regarding the Wood Street property), which stated, in pertinent part:

4

> [T]he facts for such belief are that on September 20, 2011, Cpl. R.C. Hebb, UCSD, did obtain information from an individual/informant that gave sworn, handwritten statements advising that the day before at the residence located at 85 Wood Street, Buckhannon, Upshur County, WV., they had witnessed several items within the said residence that are used in the making of a Clandestine Drug Lab, including but not limited to; lithium batteries, Sudafed, Starting Fluid, jars, tubing and coffee filters. These are components commonly used in the manufacturing of methamphetamine. The informant advised that the Clandestine Drug lab is being manufactured by Richard Garrison.

As was raised in the motion and at the hearing, the only differences in the two affidavits are the street addresses of the residences and the naming of Defendant as the owner of the Upper Childers Ave. residence and of Richard Garrison as the manufacturer of the meth at the Wood Street residence.

Magistrate Coffman then issued the warrant for 85 Wood Street.

### IV.  Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by

Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

## Leon Good Faith Exception

The Government argues that, even if the information in the affidavit were found to be insufficient for a finding of probable cause to issue a search warrant, the evidence seized in the second search should not be suppressed pursuant to the "good faith exception" stated in U.S. v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 677 (1984). Defendant argues that Leon does not apply because the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unseasonable. Defendant argues that this case presents the perfect example of a "bare bones" affidavit in which objective facts supporting a probable cause finding are completely lacking. In addition, the case involved minimal police investigation to corroborate unsubstantiated claims made by the police informant.

The undersigned will look first to the "good faith" exception and, if this exception is inapplicable, then to a determination of whether or not there was probable cause to support the warrant. This approach was approved by the United States Supreme Court in Leon,[1] and by the

---

[1] If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice. Leon at 925, 104 S. Ct. at 3421-3422.

6

Fourth Circuit in <u>United States v. Bynum</u>, 293 F.3d 192 (4th Cir. 2002) ("Assuming without deciding that no probable cause supported the warrant, we will proceed 'immediately to a consideration of the officers' good faith.'") (<u>citing Leon</u>); <u>United States v. Legg</u>, 18 F.3d 240 (4th Cir. 1994)("We turn first to consideration of the good faith exception.")

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." <u>United States v. Calandra</u>, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In <u>Leon</u>, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

<u>Leon</u> at 915, 104 S. Ct. at 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

<u>Id.</u> at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

<u>Id</u>. at 922, 104 S. Ct. at 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and

7

acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

Defendant has presented no evidence, and does not argue that Magistrate Coffman was misled by false information knowingly or recklessly provided by Cpl. Hebb. Further, the undersigned finds that Cpl. Hebb did not knowingly or with a reckless disregard for the truth misrepresent the facts to mislead Magistrate Coffman. The first situation therefore does not apply.

The undersigned also finds the warrant was not so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid. Therefore the fourth exception does not apply.

Defendant argues that the second and third exceptions apply, first arguing that Magistrate Coffman acted as a "rubber stamp" in issuing the search warrant. In Leon, the Court stated that when a magistrate abandons his neutral role "in the manner condemned in *Lo-Ji Sales, Inc. v. New York*," then the good faith exception should not apply. Leon, 468 U.S. at 923, 104 S.Ct. 3405. Defendant has not presented any evidence that the magistrate "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." In Lo-Ji Sales, an investigator sought a warrant to search an adult bookstore and presented a Town Justice with two allegedly obscene films along with an affidavit indicating that "similar" films were present in the bookstore. 442 U.S. at 321, 99 S.Ct. 2319. After viewing the two films, the Town Justice issued a warrant authorizing a search of the bookstore for items determined to be possessed in violation of law. Id. at 321-22, 99 S.Ct. 2319. The warrant did not list those items; instead, the Town Justice accompanied law enforcement officers on a search of the bookstore, examined the materials therein to assess their obscenity, then authorized the seizure the items deemed obscene. Id. at 326-27, 99 S.Ct. 2319. The Supreme Court stated that the Town Justice "was not acting as a judicial officer but as an adjunct law enforcement officer." Id. at 327, 99S.Ct. 2319. The Court disapproved of the

9

Town Justice's reliance on the "conclusory" allegations that "similar" items were present at the store and criticized the issuance of an open-ended warrant. Regarding the actions of the Town Justice in <u>Lo-Ji Sales,</u> the Supreme Court stated:

> He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all "similar" items as well, leaving determination of what was "similar" to the officer's discretion. Indeed, he yielded to the State Police even the completion of the general provision of the warrant. Though it would not have validated the warrant in any event, the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.

In <u>U.S. v. Doyle</u>, 650 F.3d 460 (4th Cir. 2011), the Fourth Circuit stated:

> Doyle does not contend that the state magistrate issued an open-ended warrant or executed the search alongside law enforcement officers as did the Town Justice in *Lo-Ji Sales*. And while this Court has held that a magistrate abandons his judicial role when issuing a warrant based on a "bare bones affidavit," *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), if a magistrate issues a warrant on the basis of nonconclusory statements that nonetheless fail to establish probable cause, the reasonableness of the officer's execution of the warrant is better analyzed under the third circumstance discussed in *Leon*, which we address below. *See Andrews*, 577 F.3d at 240 (stating that a "rubber stamp" challenge to judicial neutrality "[e]ssentially . . . recasts Andrews' argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding"); *see also United States v. Sager*, 743 F.2d 1261 (8th Cir. 1984)(rejecting rubber stamp challenge to neutrality as "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable"). Accordingly, we are reluctant to conclude that the state magistrate so abandoned his judicial role as to require a departure from the *Leon* good faith exception.

Finding similarly that Defendant here has presented no evidence showing Magistrate Coffman acted in any way similarly to the judicial officer in <u>Lo-Ji</u>, the undersigned does not conclude that the magistrate "so abandoned his judicial role as to require a departure from the *Leon*

good faith exception." The second exception to Leon, therefore, does not apply in the instant case.

Defendant's most persuasive argument is that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unseasonable. Defendant argues that this case presents the perfect example of a "bare bones" affidavit in which objective facts supporting a probable cause finding are completely lacking. In addition, he argues that the case involved minimal police investigation to corroborate unsubstantiated claims made by the police informant.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). Defendant argues "[t]he affidavit in support of the search warrant here was even worse than the affidavit rejected by the Fourth Circuit Court of Appeals in United States v. Wilhelm . . ."

The court can consider the unsworn statements made to the magistrate in support of the affidavit, however. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." (Emphasis added). The question before the court is not, however, whether the warrant was supported by probable cause, but whether it was so deficient that relying on it was unreasonable. When considering the application of the good faith exception, courts "should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable." United States v. Legg, 18 F.3d 240 (4th Cir. 1994).

In Doyle, supra, the Fourth Circuit first held that the officer's unsworn statements would not

11

provide the necessary foundation for the issuance of the warrant itself, but continued:

> However, the issue on appeal is not simply whether the warrant was deficient, but rather whether it was so deficient that relying on it was unreasonable, thus precluding operation of the good faith exception to the warrant requirement. When considering n the application of the good faith exception, courts "should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable" United States v. Legg, 18 F.3d 240 (4th Cir. 1994). As such, "we are not limited to consideration of only the facts appearing on the face of the affidavit." Perez, 393 F.3d at 462; see also United States v. Edwards, 798 F.2d 686 (4th Cir. 1986)(concluding that an officer's unrecorded oral presentation of critical information absent from the supporting affidavit did not preclude application of the Leon good faith exception).

The Court then concluded that there was "remarkably scant evidence in the affidavit (or Rouse's [unsworn] investigation summary) to support a belief that Doyle in fact possessed child pornography." The Fourth Circuit has therefore taken into account unsworn testimony in its consideration of the "totality of the circumstances." Other circuit courts have similarly found.

In United States v. Richardson, 943 F.2d 547 (5th Cir. 1991), the Fifth Circuit reversed the district court's decision to suppress where the agent had not signed the affidavit and the magistrate judge, in a telephone conversation, did not require an oath or affirmation of the facts in the affidavit. The court ruled the magistrate judge's failure to administer the oath was not a departure from his neutral and detached role, but was an inadvertent mistake. In United States v. Kelley, 140 F.3d 596 (5th Cir. 1998), the Fifth Circuit rejected a "per se rule that an unsigned and undated warrant can never suffice," and concluded suppression would not serve a deterrent purpose. In United States v. Matias, 836 F.2d 744 (2d Cir. 1988), the Second Circuit rejected a claim that a warrant was invalid because government agents applying for the warrant by telephone were not placed under oath or formally sworn ; see also United States v. Callwood, 66 F.3d 1110 (10th Cir. 1995)(ruling the exclusion of evidence is not "the appropriate remedy" for the issuing magistrate judge's failure to

administer an oath to an officer, referring to Leon); United States v. Kurt, 986 F.2d 309 (9th Cir. 1993) (applying the good-faith exception where a judge instructed a detective to change an address on the warrant without administering an oath); United States v. Moore, 968 F2d. 216 (2d Cir. 1992)(holding Judge Assini's failure to require an oath or affirmation was also an oversight that did not preclude application of the good faith exception.) In U.S. v. Hessman, 369 F.3d 1016 (8th Cir. 2004), the Eight Circuit held that an officer could have reasonably relied on a search warrant that had not been sworn or attested when it was executed. The court reasoned that the officer was in contact with the magistrate while the warrant was considered, and could have signed and sworn to the affidavit had the magistrate requested.

In U.S. v. Mannion, 54 Fed.Appx. 372 (4th Cir. 2002)(unpublished) the Fourth Circuit held:

Even had the search warrant been invalid due to its reliance on unsworn oral statements, however, we find that the evidence does not establish that: Blanchard knowingly presented false information or recklessly disregarded the truth, the state court judge who issued the warrant was biased, Blanchard's affidavit utterly failed to establish probable cause, or the search warrant was facially insufficient in particularizing the place to be searched or the items to be seized.

As already discussed, the affidavit, in particular considered along with the statements of Cpl. Hebb to Magistrate Coffman, contains more than the conclusions of confidential informants without corroboration or independent investigation. The written affidavit itself stated it was based on sworn, handwritten statements (plural). The referred-to "statements" advised that "they" (also plural) had witnessed items at Defendant's residence that were used in clandestine drug labs. The fact that the statements were provided face-to-face and in sworn, written statements to police means supports a finding they were more than just "anonymous tips."

Cpl. Hebb provided the written affidavit to the magistrate, and also conveyed some

13

information orally that there were actually three informants who gave sworn, written statements and that one, John Arbogast, had given good information before. At the conclusion, Magistrate Coffman had Cpl. Hebb swear that the information in his affidavit was true. There is no indication that Cpl. Hebb sought not to swear to his orally-conveyed information. There is further no indication that he knowingly presented false information or recklessly disregarded the truth; that Magistrate Coffman was biased; that the affidavit utterly failed to establish probable cause; or that the search warrant was facially insufficient in particularizing the place to be searched or the items to be seized.

For all the above reasons, the undersigned finds Cpl. Hebb's reliance on the search warrant issued by the undersigned Magistrate Judge was objectively reasonable. The good faith exception, therefore, renders the evidence seized in the search admissible, even if it were determined there was not probable cause to issue the search warrant.

Inasmuch as an order denying defendant's motion to suppress may be tantamount to a dispositive motion, it is the **RECOMMENDATION** of the undersigned Magistrate Judge that defendant's Motion to Suppress Evidence (Docket Entry 91) be **DENIED.**

Any party may, within fourteen (14) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation for Disposition set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208

(1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 16th day of February, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE